**Wayne Allen DENES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1183S383.

Supreme Court of Indiana.

May 28, 1987.

Susan K. Carpenter, Public Defender, Eric L. Mayer, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant Wayne Denes was charged with attempted murder. Following a jury verdict of guilty but mentally ill, defendant was sentenced to a term of thirty years. The trial court recommended confinement at Logansport State Hospital. Defendant claims error upon the following issues in this direct appeal: 1) failure to hold a second competency hearing; 2) adequacy of jury instruction on intent to kill as an essential element of attempted murder; 3) whether instructions incorrectly summarized testimony and misled jury; and, 4) prosecutorial misconduct.

## Issue 1

At the defendant's court appearance on July 22, 1981, the day following his arrest, the trial court, *sua sponte*, appointed two psychiatrists to examine the defendant and determine whether he understood the nature of the proceedings and had the ability to assist counsel in preparation of his defense. Defendant's notice of intent to interpose the defense of insanity was filed July 29, 1981. The following day, the Dekalb County Sheriff petitioned the court for authorization to transfer the defendant to Logansport State Hospital, alleging that the defendant was experiencing periods of withdrawal, depression, and anxiety; that he was communicating to jail staff members regarding his inability to cope with the

environment; and that he was already under the care of a psychiatrist and receiving prescribed medication including thorazine, stelazine, and diazide.

At the subsequent hearing conducted following the sheriff's motion to transfer, the sheriff testified that defendant "blacked out" while pacing the floor, resulting in injuries and medical treatment. The sheriff also stated that defendant had been complaining of the inability to read written material. The sheriff's petition was granted, and the trial court further ordered Logansport State Hospital to provide maximum security of the defendant at all times. On July 29, 1981, defendant filed his notice of intent to interpose insanity defense.

In response to the court appointment, psychiatrist Robert B. Yuhn, M.D., filed his report August 3, 1981, stating his diagnosis as: "schizophrenia: paranoid type, chronic, severe" and stated that defendant "is not competent to stand on trial and is not competent to ask assistance from his legal counsellor." Dr. Yuhn recommended that the defendant needed immediate psychiatric treatment. On September 9, 1981, the trial court received the report of Dr. Kenneth Fabian, M.D., also appointed to examine the defendant. Dr. Fabian's diagnosis was "schizophrenia, chronic undifferentiated type with some psychosis."

Both Dr. Yuhn and Dr. Fabian testified at the competency hearing on September 25, 1981. Dr. Yuhn's testimony was consistent with his report. Amplifying his written report, Dr. Fabian, when asked whether defendant had the ability to understand the proceedings and to assist counsel in the preparation of his defense, testified that "he can do it to some extent and that capacity is limited." Explaining this response, Dr. Fabian stated:

It would depend to some extent on his, how well he is medicated, for example. And he is, I understand from speaking to him in the hall that he is now medicated. And would also have to take into account his mental capacity which I think is somewhat diminished and the fact that he has a rather childlike personality. So with considerable assistance on the part

of counsel he has a limited capacity to do something to help him. Perhaps the law breaks it down to a greater degree, with more criteria. Uh, but in a sort of childlike way he can help, if he's medicated. If he's not I doubt he could help.

Following the hearing, the trial court entered a finding that the defendant did not have the ability to understand the proceedings and assist in the preparation of his defense, and committed the defendant to the Logansport State Hospital and the Department of Mental Health "until he is able to understand the proceedings and assist in preparation of his defense."

Thereafter, on December 18, 1981, the trial court received the certification from the Superintendent of Logansport State Hospital, that defendant had attained the ability to understand the proceedings and assist in the preparation of his defense. Attached to the certification was a detailed medical report from consulting psychiatrist John U. Keating, M.D. Dr. Keating's report stated:

The patient's paranoid schizophrenic illness appears to be in almost complete remission under the present dosage of psychotropic medication.

\* \* \* \* \* \*

At the present time, in my opinion, the patient does understand the proceedings to the extent necessary and would be perfectly capable of assisting his lawyer in his own defense. It will be necessary to continue his medication at the present level, however, for him to maintain this capability.

I believe he should be returned for trial and his medication should be continued while awaiting trial and after that as well.

Defendant was then transferred from Logansport State Hospital to the custody of the Dekalb County sheriff. Jury trial was thereafter scheduled to begin April 5, 1982. Finding that Dr. Fabian was no longer in the State of Indiana, the trial court on February 4, 1982, appointed Dr. Keating, along with Dr. Yuhn, as disinterested psychiatrists to examine the defendant to de-

termine whether he was insane at the time of the commission of the alleged offense.

Pursuant to a request from the Dekalb County Sheriff, the trial court ordered that the defendant be transported to and held at the Indiana State Prison at Michigan City from March 1, 1982, through April 1, 1982, when he would be returned for trial. Portions of a report by Dr. Keating dated March 23, 1982, and filed with the trial court on April 1, 1982, which are relevant to this issue include:

> The patient has been brought down from Michigan City Prison, where he has been residing, for that purpose. According to the patient, he has not been receiving all of his medication during the twenty-three days that he has been at the other facility.
>
> \*     \*     \*     \*     \*     \*
>
> The patient is well oriented. There is no problem with his thinking or with his intelligence. He has superficial insight, but at the present time is fairly convinced that these delusions are realities.
>
> \*     \*     \*     \*     \*     \*
>
> He is suffering from a chronic paranoid schizophrenic psychosis which was in good remission with medication at the time he was returned to the jail, but from which he is presently suffering a recurrence, possibly due to irregularity of administration of the necessary medication.
>
> \*     \*     \*     \*     \*     \*
>
> It is my further opinion that unless some way can be found to get his medication given to him regularly, by the time of the trial on April 6, he will again be incompetent to stand trial.
>
> \*     \*     \*     \*     \*     \*
>
> PS: We sent a prescription for the medications Mr. Denes should be taking to the prison. Hopefully he will receive them.

At no time following Dr. Keating's report did defendant's trial counsel file any motion for further competency hearing, nor did defense counsel indicate any inability of the defendant to understand and assist in his defense.

The defendant now contends that the trial court erred by failing to hold a second competency hearing following Dr. Keating's report of March 23, 1982, which defendant argues, "raised overpowering doubts" about whether defendant would be competent to stand trial.

As emphasized in *Smith v. State* (1983), Ind., 443 N.E.2d 1187, 1188, the requirements of due process of law preclude the concept of waiver in a competency situation, and "the question of a defendant's competency to stand trial may be raised at any time, including long after trial, conviction, and sentencing have occurred." A trial court is required by statute to have a competency hearing if "at any time, the judge has reasonable grounds for believing the defendant lacks the ability to understand the procedures and to assist in his own defense", Ind.Code § 35-5-3.1-1; *Fine v. State*, (1986), Ind., 490 N.E.2d 305; *Wallace v. State* (1985), Ind., 486 N.E.2d 445; *Perry v. State* (1984), Ind., 471 N.E.2d 270.

This Court has previously recognized the possibility that "incompetence might occur subsequent to a determination of competence, in which event a trial should not be had or, if commenced, a mistrial declared." *Malo v. State* (1977), 266 Ind. 157, 161, 361 N.E.2d 1201, 1204. In *Malo,* we stated:

> The existence of facts which would be reasonable grounds under some circumstances does not *ipso facto* mandate a hearing under all circumstances. The decision whether or not to hold a hearing lies in the province of the trial judge and should be disturbed upon review, only upon a showing of clear error.

The applicable standard was recently reviewed in *Fine v. State*, 490 N.E.2d at 308:

> However, the right to a hearing is not absolute. A hearing is required by statute and due process only when there is evidence before the court that creates a reasonable doubt as to the defendant's competency. Evidence sufficient to require a hearing must be determined on the facts of each case, and the decision lies within the province of the trial judge. Absent an abuse of discretion, the trial

court's decision will not be disturbed. [Citations omitted]

It is only Dr. Keating's report of March 23, 1982, which defendant cites as suggesting doubt in defendant's competency. Defendant argues that his "transformation from incompetent status on March 23, 1982, to competent status on April 5, 1982," depended entirely upon resumption of the prescribed medication, upon which the record is devoid of further proof. We disagree with defendant's characterization of his status on March 23, 1982, as one of incompetency. Dr. Keating's report does not state that defendant was incompetent on March 23, but rather that he *may become* incompetent by the time of trial *if* his regular medication is not resumed.

Considering Dr. Keating's report, along with the trial court's opportunity to observe defendant's participation in the trial proceedings, and the absence of any request or suggestion from defendant's trial counsel relating to any alleged impaired capacity of defendant to understand and participate in his defense, we do not find any abuse of discretion in the trial court's failure to conduct a second competency hearing.

### Issue 2

Defendant contends that the trial court committed fundamental error by failing to instruct the jury that the intent to kill is an essential element of attempted murder. Defendant urges that the present facts fall squarely within the decision of this Court in *Smith v. State* (1984), Ind., 459 N.E.2d 355. We disagree.

In *Smith,* we reversed a conviction of attempted murder because of an erroneous instruction which, purporting to set forth all of the elements necessary for conviction of attempted murder, failed to include as an essential element the requirement that the defendant must have had the specific intent to commit murder. Thus the jury was led to believe that the defendant could be convicted of attempted murder merely by knowingly engaging in conduct which constituted a substantial step toward the commission of murder.

In contrast, the instructions in the case at bar did not contain any such misleading instruction. The instructions clearly informed the jury that conviction of the offense of attempted murder required proof beyond a reasonable doubt that the defendant, acting with either a conscious objective or an awareness of high probability of killing another human being, engaged in conduct that constituted a substantial step toward commission of the intentional or knowing killing of another. The jury was not misinformed that the prerequisite culpability applied to the "substantial step," but rather to the crime of murder. *See, Woodford v. State* (1986), Ind., 488 N.E.2d 1121, 1124.

We find no error on this issue.

### Issue 3

Defendant next alleges that Final Instruction No. 22 improperly misled the jury and misstated the evidence to the effect that some prosecution witnesses testified that defendant "appeared to be acting rationally and normally during and after the commission of the alleged offense and at sometimes before ...". He claims that none of the eyewitnesses to the shooting testified that defendant was acting normally and rationally during the shooting or immediately before.

Instructions having a propensity to mislead the jury are properly rejected. *Woods v. State,* (1985), Ind., 484 N.E.2d 3; *Brewer v. State* (1969), 253 Ind. 154, 252 N.E.2d 429. Jury instructions lie largely within the trial court's discretion. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied,* — U.S. —, 106 S.Ct. 1241, 89 L.Ed.2d 349.

The trial court instructed the jury that "some witnesses" testified, in contrast to defendant's argument that the jury was instructed that "eyewitnesses" testified. Instruction No. 22 instructed the jury that certain lay witnesses were permitted to give opinions because they had an opportunity to observe the defendant, but that it was the jurors' responsibility to judge and weigh the credibility to be given such testi-

mony. The instruction did not mislead the jury as to the law, nor did it misstate the evidence. The record supports the statement that some of the witnesses for the State testified that defendant appeared to be acting rationally and normally during and after the commission of the alleged offense and at sometimes before. Reading the instructions as a whole, we do not find that this single instruction either mislead the jury or misstated the evidence. No error exists in this issue.

### Issue 4

Defendant contends that the court committed fundamental error regarding alleged prosecutorial misconduct. Defendant alleges that various remarks made by the prosecutor during his closing argument unduly prejudiced defendant requiring reversal under *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. Defendant complains of certain paraphrasing of the evidence and of comments concerning the credibility of witnesses and the reasonable inferences to be drawn from the evidence.

In closing argument, the prosecutor may comment upon credibility of witnesses as long as assertions are based upon reasons which arise from the evidence. *Beard v. State* (1981), Ind., 428 N.E.2d 772. After carefully reviewing the entire closing arguments of the prosecutor, it is apparent that the prosecutorial statements cited by defendant are taken out of context, and do not improperly mislead the jury or misstate the testimony or evidence.

Furthermore we note that defendant did not object to such comments at trial. When an alleged error does not rise to the level of fundamental error, it is waived absent a contemporaneous objection. *Burris v. State* (1984), Ind., 465 N.E.2d 171; *Lacy v. State* (1982), Ind., 438 N.E.2d 968. Since no objection was made at trial and the comments do not rise to the level of fundamental error, the issue is waived.

Defendant also contends that fundamental error resulted from statements made by the State in response to defense counsel's argument which defendant claims constituted fundamental error. After defense counsel's closing argument discussed the issue of penalty and institutionalization to the jury, the trial court granted the State the opportunity to respond to defense arguments. The remarks were within the ambit of adversarial advocacy in response to argument made by defense counsel during summation. *Woodford v. State* (1986), Ind., 488 N.E.2d 1121; *Merritte v. State* (1982), Ind., 438 N.E.2d 754; *Burris, supra.* We further note that the trial court instructed the jury that comments of counsel were not evidence, and that the court's final instructions constituted the law applicable to this case. *Woodford, supra.* Prosecutors in closing argument are entitled to respond to allegations and inferences by defense counsel during the latter's closing argument. *Goodman v. State* (1985), Ind., 479 N.E.2d 513. The State availed itself of that right and did not exceed its authority. We find no reversible error.

Judgment affirmed.

DeBRULER, GIVAN and PIVARNIK, JJ., concur.

SHEPARD, C.J., concurs except as to Issue 2 in which he concurs in result only.