**Hugh Alan FREEMAN, Petitioner,**

v.

**Daniel McBRIDE and Indiana Attorney General, Respondents.**

**No. 3:92cv0651 AS.**

United States District Court, N.D. Indiana, South Bend Division.

Feb. 23, 1993.

David E. Vandercoy, Valparaiso, IN, for petitioner.

John T. Roy, Indianapolis, IN, for respondents.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On October 14, 1992, petitioner, Hugh Alan Freeman, filed a petition seeking relief under 28 U.S.C. § 2254. The petitioner is represented by Professor David E. Vandercoy of the Valparaiso University School of Law, Valparaiso, Indiana. The return filed by the respondents on January 11, 1993, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). Professor Vandercoy, assisted by Richard R. Stalbrink, a law student, have filed a Memorandum of Law on February 8, 1993. The state court record has been filed and examined pursuant to the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The case is ripe for a decision.

This petitioner was convicted of the crime of theft in the Porter Superior Court, Valparaiso, Indiana, and on December 27, 1984, the Honorable Roger Bradford of that court sentenced this petitioner to 32 years upon his plea of guilty to theft and a finding of habitual offender. Two years of the sentence was for the theft conviction which was enhanced by 30 years because of the petitioner's status as a habitual offender. At the time the guilty plea was entered, this petitioner was facing four counts of theft as well as a habitual offender charge. A plea agreement was entered while this petitioner was represented by counsel whereby he agreed to plead guilty to one count of theft and to being a habitual offender. In exchange for this plea agreement, the state prosecutor agreed to dismiss the other counts of theft and the count of felony arson. On January 19, 1988, this petitioner filed for post-conviction relief alleging that his guilty plea was not entered into voluntarily as he was taking Thorazine, a drug used to treat psychotic disorders and could not comprehend the proceedings. One of the errors he alleges is that Judge Bradford did not sua sponte order a competency hearing. He also faults Judge Bradford for not advising as to the minimum and maximum limits of the habitual offender enhancement. The state court post-conviction relief proceedings were presided over by Judge Pro Tem, William Alexa. During those proceedings, the petitioner introduced evidence that due to the amount of Thorazine he was taking at the time of the guilty plea hearing, he could not have had the mental capacity necessary to enter a guilty plea. Judge Pro Tem Alexa denied that petition on the basis that the transcript of the guilty plea indicated that the petitioner was fully aware of the proceedings.

An appeal was taken to the Court of Appeals of Indiana with reference to the denial of post-conviction relief by Judge Pro Tem Alexa. The Third District of that court, speaking through Judge Garrard, affirmed that decision in an unpublished memorandum decision in which Judges Hoffman and Robertson concurred. For the immediate reference of all concerned, the memorandum decision is marked as Appendix "A", attached hereto and incorporated herein. Professor David E. Vandercoy was counsel for this petitioner in the aforesaid proceedings before the Court of Appeals of Indiana. The Supreme Court of Indiana has denied transfer with reference to the aforesaid Court of Appeals opinion.

The basic constitutional obligation with reference to the taking of a guilty plea is found in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *See also Lewis*

*v. United States,* 902 F.2d 576 (7th Cir.), *cert. denied,* 498 U.S. 875, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). *See also United States v. Collins,* 949 F.2d 921, 927 (7th Cir.1991), quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). *But see also Chichakly v. United States,* 926 F.2d 624 (7th Cir.1991).

Quite frankly, and without disrespect, able counsel for this petitioner wants to put a spin on the medical testimony heard in the PCR hearing that may not be totally justified. This court has taken the trouble to read in its entirety the testimony of Dr. Robert Maickel. It also needs to be understood that this court has not seen or heard Dr. Maickel, but Judge Pro Tem Alexa did. It is also important to note that Dr. Maickel did not see or examine this petitioner at any time relevant to his plea proceedings. Looking at his evidence in total from the transcript, such remains too slender a reed to find a constitutional flaw in the plea proceedings under *Boykin, supra.* This court has also taken the trouble to read carefully in its entirety the proceedings before Judge Roger Bradford, a highly experienced and competent state trial judge. Those proceedings on their face belie any of the kinds of incompetency that this petitioner is now arguing for some eight years later. The written transcript of the careful and thorough manner in which Judge Bradford went about his task belies any conclusion that this petitioner was either a "sleepy drunk," "hard to arouse," "asleep at the switch," or simply "zonked."

The standards by which a state trial judge are required to conduct a competency hearing as a part of a plea of guilty in a state criminal case involves a substantial but limited amount of discretion. The aforementioned discretion has been cogently described and illustrated by the Supreme Court in *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), and *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

In *Pate, supra,* the petitioner, who had a history of mental illness and psychiatric problems, was convicted of murder and the Supreme Court evaluated whether said petitioner "was denied due process by the state court's failure to conduct a hearing upon [the petitioner's] competency to stand trial." *Id.*

at 377, 86 S.Ct. at 838. During the trial, the court heard testimony by numerous witnesses detailing the petitioner's psychiatric problems. More importantly, both the prosecutor and the defense attorney alluded to these same problems. In fact, the prosecutor even suggested the need for expert psychiatric testimony on this issue. On appeal and during the federal habeas corpus proceedings, the state insisted that "[the petitioner] intelligently waived this issue by his failure to request a hearing on his competence to stand trial [by failing to demand a sanity hearing]; and further, that on the basis of the evidence before the trial judge no duty rested upon him to order a hearing *sua sponte.*" *Id.* The Court, speaking through Justice Clark, indicated:

> [I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly and intelligently 'waive' his right to have the court determine his capacity to stand trial. In any event the record shows that counsel throughout the proceedings insisted that [the petitioner's] present sanity was very much in issue.
>
> * * *
>
> Where the evidence raise a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing [based on Illinois law].

*Id.* at 383, 86 S.Ct. at 841–42. Therefore, the Court held the petitioner's "constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial …" *Id.* at 385, 86 S.Ct. at 842.

In *Drope, supra,* the Court clarified and further defined the holding of *Pate, supra.* In *Drope,* the Court considered whether the petitioner's due process rights were violated "by the failure of the trial court to order a psychiatric examination with respect to [the petitioner's] competency to stand trial …" *Id.* 420 U.S. at 163, 95 S.Ct. at 900. The Court explained the numerous factors in existence at the time of the trial which should have militated against going to trial in light of the petitioner's psychiatric health. The factors included a motion for a continuance to receive psychiatric treatment, the petitioner's wife's testimony regarding numerous incidents of "strange behavior" attributable to the petitioner including an attempt to kill his

wife a short time period before the beginning of the trial, and a suicide attempt by the petitioner on the second day of the trial.

In evaluating these factors, the *Drope* Court, speaking through Chief Justice Burger, explained:

> The import of our decision in *Pate v. Robinson* [, *supra*,] is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariable indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can enter on the same facts.
>
> Here, the evidence of irrational behavior prior to trial was weaker than in *Robinson,* but there was no opinion evidence as to petitioner's competence to stand trial.... Moreover, [the defendant in *Robinson*] was present throughout his trial; petitioner was absent for a crucial portion of his trial. Petitioner's absence bears on the analysis in two ways: first, it was due to an act which suggests a rather substantial degree of mental instability contemporaneous with the trial, ...; second, as a result of petitioner's absence the trial judge and defense counsel were no longer able to observe him in the context of the trial and to gauge from his demeanor whether he was able to cooperate with his attorney and to understand the nature and object of the proceedings against him.
>
> Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial. Whatever the relationship between mental illness and incompetence to stand trial, in this case the bearing of the former on the latter was sufficiently likely that, in light of the evidence of the petitioner's behavior including

his suicide attempt, and there being no opportunity without his presence to evaluate that bearing in fact, the correct course was to suspend the trial until such an evaluation could be made. That this might have aborted the trial is a hard reality, but we cannot fail to note that such a result might have been avoided by prompt psychiatric examination before trial, when is was sought by petitioner.

*Id.* at 179, 95 S.Ct. at 908.

A facial examination of the record here indicates that this petitioner when he was a defendant in a state criminal proceeding some eight years ago was competent. More importantly, the record comports with the explanations enunciated in *Pate* and *Drope.* Such being the case, the failure to conduct a competency hearing does not undermine the plea of guilty. *See United States v. Vamos,* 797 F.2d 1146, 1150 (2d Cir.1986), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987). The suggestion by Chief Judge Bauer in *United States v. Collins,* 949 F.2d at 927, is apropos to the conduct of Judge Bradford in this case.

Certainly, basic concepts of federalism under the provisions of 28 U.S.C. § 2254 require some respect for the way in which a state court has chosen to take a plea of guilty as long as a facial record discloses compliance with *Boykin, supra.* The opinion of Judge Garrard is entitled to most respectful attention by this court and that opinion reached the correct result. There is some burden on a defendant in a state criminal case or his counsel to raise the competency issue either before trial or before a plea of guilty. *See United States ex rel. Rivers v. Franzen,* 692 F.2d 491, 500 (7th Cir.1982), and *Balfour v. Haws,* 892 F.2d 556 (7th Cir.1989).

This court has given most careful attention to the memorandum of law filed on behalf of the petitioner on February 8, 1993, and this court is most appreciative of the professional efforts by Professor Vandercoy and his staff notwithstanding the fact that the brief reargues the facts and puts a spin on them most favorable to this petitioner. Although the professional competence that is therein displayed is very much valued by this court, it does not persuade this court to use its extraordinary collateral authority and jurisdic-

tion under § 2254 to reverse, now eight years later, a conviction based upon a plea of guilty in a state court before a highly competent and experienced state court judge. The relief requested under § 2254 is now **DENIED. IT IS SO ORDERED.**

APPENDIX A

NOT FOR PUBLICATION

ATTORNEY FOR APPELLANT:

DAVID E. VANDERCOY

Supervising Attorney

Valparaiso University Law Clinic

Valparaiso, Indiana 46383

ATTORNEYS FOR APPELLEE:

LINLEY E. PEARSON

Attorney General of Indiana

MARY DREYER

Deputy Attorney General

219 State House

Indianapolis, Indiana 46204

IN THE

COURT OF APPEALS OF INDIANA

THIRD DISTRICT

HUGH ALAN FREEMAN,

Defendant–Appellant

vs.

STATE OF INDIANA,

Plaintiff–Appellee

No. 64A03–8909–PC–404

APPEAL FROM THE PORTER SUPERIOR COURT

The Honorable William Alexa, Judge Pro Tempore

Cause No. 84–PSCr–80

GARRARD, J.

*MEMORANDUM DECISION*

As part of a plea agreement Freeman plead guilty and was sentenced for theft as an habitual offender. He subsequently petitioned for post conviction relief asserting that his plea was not voluntary because he was being treated with Thorazine [1] at the time he entered his plea. Post conviction relief was denied and this appeal followed.

He contends that the court erred in finding his plea voluntary and that the court erred at his guilty plea proceeding in failing to conduct a competency hearing.

Our standard of review for the first contention prohibits reversal unless the evidence is without conflict and leads solely to a different result than that reached by the trial court. *Stewart v. State* (1988), Ind., 517 N.E.2d 1230.

At the post conviction hearing Freeman presented evidence that his dosage of Thorazine was substantially increased between November 2, 1984 when the state secured a psychological evaluation of him and December 27 when his plea was entered. He also presented expert testimony regarding the uses and potential side effects of Thorazine. The expert gave his opinion that a person of Freeman's size receiving his dosage would not be capable of making voluntary and intelligent decisions and would suffer significant impairment of his ability to make a decision.

The countervailing evidence which was relied upon by the trial court consisted mainly of the transcript of the guilty plea hearing. During the hearing Freeman disclosed that he had been hospitalized for schizophrenia six or seven years before and had received out patient care from Porter–Starke Services for the past three years. He disclosed that he was taking Thorazine, that its only effect on him was to make him tired and that it did not affect his mental functioning or ability to understand what was going on. Freeman told the court about the theft at issue and recalled the events of his prior felony convictions. The post conviction court additionally noted that Freeman was represented by counsel at the plea proceeding and that nei-

---

1. Thorazine is the trade name for an antipsychotic agent useful in controlling excited psychotic behavior.

ther his attorney nor the trial judge, after observing Freeman throughout, expressed any concern regarding his ability to enter an intelligent voluntary plea. The court concluded that Freeman's plea had been voluntarily and intelligently entered into.

Thus, the evidence is certainly not without conflict. It does not inescapably lead to the conclusion that Freeman's plea was involuntary. He has therefore failed to meet his burden of proof on appeal.

Secondly, he argues that the court had a duty to conduct a meaningful inquiry to determine his competency to enter a knowing and intelligent plea once the court learned he was taking Thorazine. We disagree.

Freeman's argument, in effect, urges that the court should have conducted a competency hearing. No petition for such a hearing had been filed. The court had the November 2 report indicating that the Psychiatric Unit Director at Westville considered Freeman stabilized and possessed of sufficient comprehension to understand the charges against him and assist his attorney in his defense. The court inquired of Freeman concerning the effects of the Thorazine and was assured by Freeman that its only effect was to make him feel tired. Freeman answered questions throughout the proceeding in an apparently intelligent, polite and forthright manner. His conduct during the proceeding apparently gave no warning or cause for alarm.

Where no petition challenging competency has been filed and the circumstances do not create for the court a bona fide or reasonable doubt concerning the accused's competency, it is not error to fail to conduct a hearing. *Payton v. State* (1987), Ind., 507 N.E.2d 579; *Fine v. State* (1986), Ind., 490 N.E.2d 305; *Hill v. State* (1983), Ind.App., 451 N.E.2d 683.

No error has been shown.

Affirmed.

HOFFMAN, P.J. and ROBERTSON, J. concur.